GULOTTA, Judge.
This is an appeal from a judgment dismissing plaintiff Sara Jasper’s suit for property damage deductible, damages and injuries, and from a judgment dismissing plaintiff Insured Lloyd’s suit in subrogation against defendant, Marie Garcia, and her insurer.
The facts are that on October 30, 1968 at approximately 4:45 p.m., a truck and trailer owned by O.K. Storage and Transfer Company was traveling inbound, or in the direction of the Mississippi River, in the right lane of the three-lane I — 10 Expressway. Defendant Garcia was driving her automobile also in the right lane following the truck. Plaintiff was traveling in the center lane and to the left of the truck and the Garcia automobile. At approximately 60 feet on the lake side of the South Broad overpass, a box, 5i/2 x 6 x 7, weighing approximately 280 pounds fell from the O.K. Trailer into the path of the Garcia automobile, coming to rest against a light standard on the righthand shoulder of the road. Miss Garcia swerved to the left (from the right lane to the center lane) to avoid striking the box, bringing her automobile directly behind and in the same traffic lane as the Jasper vehicle. Having observed the falling box and thinking that the truck driver was unaware of the occurrence, plaintiff Jasper came alongside the truck and signaled the driver by pointing in the direction of the box. Shortly thereafter, the Garcia vehicle struck the rear of plaintiff’s vehicle. As a result, plaintiff was injured.
Other suits grew out of this accident. However, in the instant matter, plaintiffs brought suit only against Garcia and her insurer. O.K. was brought into this matter by Garcia’s third-party petition. The trial judge dismissed both the main demand and the third-party petition. Only plaintiff appealed. While the third-party demand against O.K. was dismissed, no appeal has been taken by Garcia from that dismissal, nor has any answer to plaintiff’s appeal been filed by her. Therefore, only plaintiff’s appeal of the dismissal against defendant Garcia is before us.
In seeking reversal, Jasper argues that the trial court erred in finding her negligent by not affording her the protective umbrella of the “good Samaritan” rule. Among other cases cited by her, she relies on the rule as postulated in the case of Callais v. Furniture Showrooms, Inc., 213 So.2d 537 (La.App. 1st Cir. 1968), at page 540, which is that one in the position of a “good Samaritan”
“ * * * is not guilty of contributory negligence in exposing himself to a known or obvious danger, if under similar circumstances an ordinarily prudent person might have done likewise, or if the attempted rescue was not such as to make the effort rash and reckless in the judgment of an ordinarily prudent person.”
Jasper argues her action# in this instance were not reckless or rash, and under the circumstances, she acted as a prudent person.
Garcia, on the other hand, insists she reacted reasonably to the sudden emergency caused by the falling box into her path. She further argues plaintiff was negligent in blocking the only avenue available by which she could extricate herself from the emergency.
We do not agree. The sequence of events, in our opinion, does not support Garcia’s contention. While defendant Garcia was placed in a position of sudden emergency, her failure to exercise proper control over her automobile after having *391 changed lanes constituted negligence on her part which was a proximate "cause of the accident. Miss Garcia testified she was following the truck at a distance of one or one and a half automobile lengths at a speed between 30 and 40 mph.[1] She stated after the box fell she looked into the rearview mirror to see that the back wheels of her vehicle had cleared the box. She further stated she again looked in the rearview mirror and could see the box rolling toward the shoulder of the road. She observed this after she had decided to go into the middle lane.
Officer Gerald O’Neil, who investigated the accident, measured the point of impact at 876 feet (almost three city blocks) from the point at which the box came to rest. Dr. Frank E. Durham, an expert in physics, testified after the box left the truck, it traveled in the same direction for a short time before coming to a stop against the light standard. He added if an automobile were traveling at a speed of 40 mph or 59 feet per second, 14.8 seconds would be required to traverse the 876 feet. If speed is reduced to 35 mph, 17 seconds is required. Clearly, defendant Garcia had sufficient time and ample opportunity to avoid the moving Jasper vehicle were she exercising a proper lookout for traffic traveling in front of her.
The evidence convinces us that undue attention to the rolling box prevented adequate observation of traffic in front of this defendant. We conclude, as did the trial judge, Garcia’s action constituted negligence which was a proximate cause of the accident. However, the trial judge concluded Miss Jasper’s negligence barred her recovery. In this respect, the trial judge erred. Jasper testified, upon observing the falling box, she came alongside the truck and signaled the impending danger to the driver. She stated she was traveling at a speed of 35 mph to the left and to the rear of the truck. She accelerated to warn the driver as the truck was reducing its speed. After notifying the driver, she was again accelerating when the impact occurred. John Lyons, an O.K. Storage employee riding on the far right side of the truck, stated Miss Jasper stopped to signal the truck driver. However, Horace Jones, driver of the truck, stated the Jasper vehicle slowed to approximately 20 mph. Herbert Davis, the other occupant of the truck, supported the testimony of Jones to the effect the Jasper vehicle had slowed but did not stop. However, he was unable to testify as to the speed of the Jasper vehicle. Our consideration of the entire record convinces us Jasper did not stop her vehicle when she signaled the truck. In slowing her vehicle in the center lane of the expressway, under the circumstances, Jasper did not create a hazard for attentive drivers following on the expressway. The slowing of the Jasper vehicle was not the proximate cause of the accident. Accordingly, we fail to find negligence on her part barring her recovery. Were we convinced from the evidence that had Jasper stopped or brought her automobile to an almost stop on the highway, a different result would follow. See Nomey v. Great American Indemnity Company, 121 So.2d 763 (La.App.2nd Cir. 1960).
We now turn to the question of quantum. Plaintiff complained of pain in the right shoulder, neck and lower part of the back. She was taken to Touro Infirmary immediately after the accident where x-rays were taken of the pelvis, the femur and the spine. Medication for pain and muscle relaxants were prescribed. On November 1, 1968, plaintiff was seen by Dr. Alvin Cotlar, a general surgeon. His diagnosis was a cervical spine sprain and acute lumbar sacral sprain. Dr. Cotlar also found multi-body contusions and abrasions involving the shoulder and interior chest. Possible muscle spasm was found, and a narrowing of the vertebral space at the *392 L5-S1 level was discerned. Diathermy and massage treatment was administered, and pain relievers, muscle relaxants and exercise was prescribed. X-rays were taken by Dr. Philip Mayers at Dr. Cotlar’s suggestion; however, the record is silent as to the result. On November 8, 1968, because of increased pain, a cervical collar was prescribed. A back support was also prescribed. Plaintiff was seen almost daily by Dr. Cotlar until February 4, 1969. She was discharged one month later. At the time of discharge, Dr. Cotlar believed plaintiff could return to light duty and could resume her normal duties in about a month thereafter. Upon finding muscle spasm in the early part of February, plaintiff was referred by Dr. Cotlar to Dr. Stewart Phillips for orthopedic consultation. The orthopedist saw plaintiff on February 3, 1969. According to his report, Miss Jasper had returned to her pre-in-jured state insofar as the injury to the cervical and lumbar spine was concerned. However, he did find pain in the shoulder which, in his opinion, was a result of a pre-existing tendonitis aggravated by the accident. Injection therapy was recommended. Plaintiff was not seen again by Dr. Phillips until March 4, 1971, at which time she complained of pain in her right shoulder upon raising her arms. We deem the sum of $7,500.00 to be an appropriate and proper award for the pain and suffering incurred by plaintiff.[2]
Miss Jasper seeks reimbursement for loss of earnings. Her employer stated she was earning at the time of the accident $130.00 per week in her employment at a lounge and package liquor store. He testified she returned to work in April, 1968; and while he continued to pay her during her convalescence between October 30 and April, 1968, he expected reimbursement if she received compensation for her loss of earnings. Under the circumstances, we find no basis for plaintiff’s claim in this respect. She did not suffer the actual loss of any earnings.
In Fort v. Northern Insurance Company of New York, 111 So.2d 874 (La.App.2nd Cir. 1959), a claim for loss of earnings by a stenographer was rejected because her salary was continued during the time she was unable to work. In Lambert v. Cire, 179 So.2d 112 (Orl. La.App.1938), the court denied medical expenses incurred as a result of injuries received by a young boy on the grounds that these expenses were voluntarily paid by the boy’s employer.[3]
Furthermore, plaintiff’s employer’s hope for reimbursement cannot be the basis of plaintiff’s claim as an item of damages.
In Chase v. Dunbar, 185 So.2d 563 (La.App. 1st Cir. 1966), the court stated at page 571,
“ * * * when the employer pays the employee full wages in lieu of compensation, the employee has suffered no loss of wages and the liability of the tort-feasor is limited to reimbursement to the employer or insurer of such amounts as the employer or insurer is legally obligated to pay.” (emphasis ours).
The employee in Chase was denied recovery of loss of wages because he suffered no loss. Our conclusion is the same in the instant case. As in Chase, plaintiff suffered no loss of pay, and there is no showing that Jasper’s employer was legally obligated to pay her wages.
The expenses incurred by plaintiff Jasper which constitute special damages are as follows:
$100.00 - Deductible
30.00 - X-rays by Dr. Philip Mayers
71.00 - Touro Infirmary Emergency Room
19.43 - Cervical Collar
13.12 - Abdominal and Back Support
83.00 - Dr. Stewart Phillips
439.00 - Dr. Alvin Cotlar
$755.55
*393 It was stipulated that the loss incurred by Insured Lloyds as subrogee amounted to $1,342.00.
Accordingly, the judgment of the trial court is reversed. It is now ordered that there he judgment in favor of plaintiff, Sara Jasper, and against Marie L. Garcia and her insurer, Continental Insurance Company, in the sum of $8,255.55 and in favor of Insured Lloyds as subrogee, and against Marie L. Garcia and Continental Insurance Company in the sum of $1,342.00 with interest from date of judicial demand until paid. Defendant Garcia is to pay all costs.
Reversed and rendered.

. In her testimony, she stated she was traveling between 30 and 36 mph. At another point in her testimony, she stated she was going at a rate of speed between 35 and 40 mph.

. Pelas v. Gulf Oil Corporation, 222 So.2d 581 (La.App.4th Cir. 1969).

. See also Althans v. Toye Bros. Yellow Cab Co., 191 So. 717 (Orl.La.App.1939).