383 So.2d 1308 (1980)
Rose Mae JONES, Plaintiff-Appellee,
v.
Lee Joseph LEDET, Defendant-Appellant.
No. 7188.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1980.
Rehearing Denied May 29, 1980.
*1309 Clyde Fontenot of Fontenot & Mitchell, Ville Platte, for defendant-appellant.
Raymond J. LeJeune, Mamou, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX, GUIDRY, STOKER and LABORDE, JJ.
CULPEPPER, Judge.
This appeal is from a default judgment for damages for personal injuries resulting from a battery. The substantial issue on appeal is whether plaintiff proved her damages by competent evidence, in particular, by testimony which was not hearsay.
At the hearing for confirmation of default, plaintiff and her co-worker, Susie Richardson, were the only witnesses. Plaintiff testified that on September 20, 1978 she was working at her job of sewing rice sacks at a rice mill when her foreman, the defendant Ledet, started an argument and finally struck her on the jaw with his fist and knocked her down. Plaintiff said she first went to the office of the chief of police and there filed criminal charges against Ledet. She stated she then went to the hospital and saw Dr. Perron, who took an x-ray, which showed that the jaw bone was broken. She said Dr. Perron sent her to Dr. Didier Ardoin. Her testimony as to the ensuing events is as follows:
"Q. Did Dr. Perron continue to treat you?
A. Yessir. He told me to go to Dr. ___ this Dr. in Eunice.
Q. Dr. Didier Ardoin.
A. Dr. Didier Ardoin. And I went there.
Q. And you went?
A. Yes sir.
Q. What did Dr. Ardoin tell you?
A. He told me that it was broken, and that I needed surgery.
Q. Okay. Where was the surgery performed?
A. At Savoy's Hospital in Mamou.
Q. And did you go into the hospital on September 24th?
A. Yes sir.
Q. And remain there from September 24th through September 27th?
A. Yessir.
Q. I show you a copy of a bill from Savoy Hospital stating the dates of September 24th through 27th in the amount of nine hundred and forty-nine dollars *1310 ($949.00). Now, is that the bill that you received from the hospital?
A. Yes.
Q. Okay.

BY RAYMOND LEJEUNE, Counsel for plaintiff:
We would like to offer, file, and introduce this document as P-2.
BY THE COURT:
Let it be introduced into evidence as marked.

BY RAYMOND LEJEUNE, Continued:
Q. Did Dr. Didier perform the surgery in Savoy Hospital?
A. Yes.
Q. Okay. And after the surgery, did you have occasion to see him again?
A. Yes sir. I did. I seen him the week I came out of the hospital. I had to go to his office that Monday. And he says another surgery again.
Q. And this surgery was in his office in Eunice?
A. In his office in Eunice.
Q. And what did he do then?
A. Well, he took the wires out in one place, and he removed it and put it in another place. Then I had to keep going every week, every Monday, and then about two weeks after it started, you knowit wasn't healing right. So he done another surgery.
BY THE COURT:
Did he have to put you to sleep for any of these?
A. Yes sir. He had to put me to sleep in his office.
Twice.
A. Twice in the office and one time in the hospital.
I see.

BY RAYMOND LEJEUNE, Continued:
Q. And I see here a bill from Dr. Ardoin in the amount of four hundred and twenty-five dollars ($425.00). Is that the bill that you received from Dr. Ardoin for his services?
A. Yes sir.

BY RAYMOND LEJEUNE, Counsel for plaintiff:
I mark this P-3, Your Honor.
BY THE COURT:
Let it be received into evidence as marked.

BY RAYMOND LEJEUNE, Continued:
Q. Now, you stated you saw Dr. Ardoin every Monday?
A. Um-huh.
Q. And you also were given medication at the hospital?
A. Yes.
Q. And when you were discharged, they gave you medication for pain, and that is included in that bill from Savoy Hospital?
A. Yes.
Q. In addition to thatyou say the second time that he had to put you to sleep to perform an operation was because your jaw had gotten infected?
A. Infected. Yes.
Q. Okay. Now, have you purchased any medicine or medication from Reed's Family Pharmacy?
A. Yes sir. I did.
Q. Okay. And was that in the amount of $26.34?
A. Yes.

BY RAYMOND LEJEUNE, Counsel for plaintiff:
We would offer that also.
BY THE COURT:
Let it be received in evidence, and mark it P-4.

BY RAYMOND LEJEUNE, Continued:
Q. Did you have occasion to buy any other medication other than at Reed's Pharmacy?
A. Yes. I had to get some at Deshotel's Drug Store in Mamou.
Q. Okay. And how much was that?
A. Twenty dollars and ten something.
Q. Would $10.20 be the correct amount?
A. Yes.

BY RAYMOND LEJEUNE, Counsel for plaintiff:
Your Honor, we don't have a receipt for this particular bill. We have a check for *1311 which she made out to be held until such time as she paid the bill.
BY THE COURT:
I'll accept it as evidence. I think she's telling the truth.

BY RAYMOND LEJEUNE, Counsel for plaintiff:
Okay. We would mark thisthis is made out to Deshotel Drugs ___
BY THE COURT:
That was for medicine for yourself and your condition?
A. Yes sir.
Let it be introduced into evidence.

BY RAYMOND LEJEUNE, Counsel for plaintiff:
And mark this P-5.

BY RAYMOND LEJEUNE, Continued:
A. Now, Rose, you're still under a doctor's care? Is that correct?
A. Yes.
Q. And you don't have to see him every Monday? You just see him about once a month?
A. Twice a month.
Q. Twice a month. Okay. You expect to have further medical bills from Dr. Ardoin?
A. Yes.
Q. Are you still seeing Dr. Perron?
A. No sir. Just Dr. Ardoin.
Q. Just Dr. Ardoin. Now, when your jaw was fractured after the blow, was it very painful?
A. Oh yes. It sure was.
Q. And for how long did you
A. Well, I stayed on liquid about a month and a half before I could start chewing.
Q. Did you lose quite a bit of weight?
A. Yes sure. I sure did.
Q. Now do you have any difficulty in chewing?
A. Yes sir. I do.
Q. Does your jaw bother you right now?
A. Yessir. It bothers more in the morning, you know when I get up in the morning.
Q. Is that because maybe it hadn't been moved at night, and it's stiff, or?
A. It's stiff.
Q. Now, since the timesince September 20th, have you worked?
A. No sir.
Q. Why have you not worked? Is it because of the problems that you have had with your jaw?
A. Yessir. That's why.
Q. Okay. And you're unable to say now when you feel you'll be able to go back to work?
A. No sir. I wouldn't know.
* * * * * *
BY THE COURT:
You at first had difficulty sleeping with this? Did it bother you at night? Did it disturb your rest?
A. Well, the second time that I had surgery, I couldn't sleep at all after I had the first surgery.
I see. Did the doctor have to remove any teeth?
A. No. Cause I had false teeth.
I see. And it was a fracture of the lower
A. Right here.

BY THE COURT, Continued:
Jaw bone. Lower mandible."
Plaintiff testified further that at the time of the battery on September 20, 1978 she was earning $3.00 an hour, working 40 hours a week, and some weeks worked overtime at $4.50 per hour.
Plaintiff's co-worker, Susie Richardson, testified she saw defendant strike plaintiff in the face with his fist and knock her down. She also corroborated plaintiff's testimony that the attack followed an argument and that plaintiff did not attempt to hit defendant with her hand or any other object.
The trial court awarded judgment in favor of plaintiff and against defendant for the following amounts:

"(a) Pain and Suffering $5,000.00
 (b) Medical Expenses 949.00
 (c) Physical Disfigurement 1,500.00
 (d) Loss of Wages 1,920.00
 ________
 Total $9,369.00"

*1312 The default judgment was read and signed on January 11, 1979. Defendant timely filed on January 22, 1979 a motion for new trial, in which he admits that plaintiff's suit was filed on December 1, 1978, that defendant was personally served on December 5, 1978, that a preliminary default was entered on January 3, 1979 and the final judgment rendered on January 9, 1979. Defendant does not contend he was not properly served and cited, nor does he urge any procedural defect.
Defendant alleges in his motion for new trial that although he had retained an attorney to represent him in the criminal case, he neglected, through misunderstanding and inadvertence, to notify his counsel of the civil suit. Defendant alleges further in an amended motion for a new trial, filed on January 25, 1979, that the evidence taken at the conformation of default and transcribed by the court reporter did not establish a prima facie case, since there was no medical doctor to prove the injuries, and since plaintiff perjured her testimony as to the facts of the altercation. Defendant filed affidavits of several parties stating that plaintiff started the fight by attacking defendant with a shovel, and that defendant, in self-defense, was only trying to protect himself when he hit plaintiff. After a hearing of the motion for a new trial on February 16, 1979, the district judge denied the motion for reasons orally assigned.
The defendant argues that the trial judge erred in not granting a new trial. LSA-C. C.P. Article 1972 provides it is peremptory that a new trial shall be granted: "(1) Where the "judgment appears clearly contrary to the law and the evidence; (2) Where the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial;". Article 1973 provides the discretionary grounds: "A new trial may be granted in any case if there is good grounds therefor, except as otherwise provided by law."
Defendant first emphasizes his argument that the trial court should have granted a new trial on discretionary grounds, under Article 1973, to prevent a miscarriage of justice. Defendant stresses his confusion at being involved in the criminal prosecution arising out of the same incident, and the contention that he is illiterate and neglected to inform his attorney when he was served and cited in the civil suit. He also points to the affidavits that plaintiff struck the first blow and defendant was trying to defend himself. The trial judge considered all of these arguments and rejected them. We cannot say he abused his discretion in this regard.
Defendant next argues a new trial should have been granted because the judgment was clearly contrary to the law and the evidence, under the provisions of Article 1972. The basis of this argument is LSA-C.C.P. Article 1702 which provides: "A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case." Jurisprudence construing Article 1702 holds that in confirming a default the plaintiff must prove all of the essential allegations of his petition as fully as if they had been specifically denied. Smith v. Doyle, 160 So.2d 791 (3rd Cir. 1974). Hearsay evidence does not sustain the burden of proving a prima facie case. Verrette v. Saltzman and Gordon Welding Service, Inc., 248 So.2d 876 (3rd Cir. 1971) and Blackwell v. Daigle, 317 So.2d 18 (3rd Cir. 1975).
In the present case, it is clear that plaintiff proved the battery by competent evidence. Both plaintiff and her co-worker, Susie Richardson, testified from their own knowledge that defendant struck plaintiff on the jaw with his fist and knocked her down. These two witnesses also stated that plaintiff was not attempting to strike or injure defendant in any way. Thus, a prima facie case of liability was established by competent evidence.
The only serious issue is whether plaintiff proved her damages by competent evidence, i. e., by evidence which was not hearsay. Hearsay is defined generally as evidence whose probative force depends on the competency and credibility of some person other than the witness. The basis for excluding hearsay is the lack of opportunity to test by cross-examination, under oath, *1313 the veracity and accuracy of the statement offered. Thus, the courts will not allow a witness to testify as to what some other person said or told him. Of course, there are exceptions to the hearsay rule, but we are not concerned with those exceptions in the present case.
As stated above, the first item of damages awarded by the trial judge is $5,000 for pain and suffering. A review of the above quoted portions of plaintiff's testimony shows that some of her statements regarding the nature of her injury are hearsay and cannot be considered in proving the award for pain and suffering. Plaintiff testified that Dr. Perron and Dr. Ardoin told her the x-ray showed her jaw was broken. Obviously this is hearsay and cannot be considered. The handwritten report by Dr. Perron diagnosing a fractured jawbone is also hearsay. It should not have been admitted in evidence and cannot be considered. Nothing that plaintiff was told by the doctors is competent evidence, nor are the bills of the doctors, the hospital or the drugstores.
Nevertheless, there is sufficient testimony by plaintiff of facts which she knew of her own personal knowledge, to support the award for pain and suffering. She testified that defendant struck her on the jaw with his fist and knocked her down. She stated she first went to Dr. Perron who sent her to Dr. Ardoin, who placed her in the hospital and performed surgery on her jaw. She says she was in the hospital four days, and that her jaw was swollen and painful and that it became infected and later the wires in her jaw had to be removed and put in another place.
She testified that after her release from the hospital, she returned to see Dr. Ardoin at his office once a week at first and then twice a month until the time of trial. She stated that the injury was very painful for about a month and a half and she could not chew and had to drink only liquids, causing her to lose quite a bit of weight. Furthermore, she stated that even at the time of trial, which was about four months after the battery, her jaw was still stiff and painful, that she could not talk as clearly as before, and that she had been unable to go back to work because of the injury. Of course, the trial judge saw plaintiff on the date of the trial and could actually see whether she had any residual disfigurement and could hear whether her speech was impaired at the time. We conclude there was sufficient non-hearsay testimony to support the award of $5,000 for pain and suffering.
Furthermore, for essentially the same reasons as stated above, we conclude there was sufficient non-hearsay evidence to support the award of $1,500 for physical disfigurement.
As to the award for loss of wages, plaintiff testified that at the time of the injury she was earning $3.00 per hour, working 40 hours per week and during some weeks worked overtime at $4.50 per hour. She stated at trial, almost four months after the battery, that she was still unable to work because of the injury to her jaw. The trial judge awarded $1,920 for loss of wages. Apparently, this is computed on the basis of $3.00 per hour, 40 hours a week, a total of $120 a week or $480 a month for four months. Plaintiff's non-hearsay testimony supports this award.
As to the award of $949 for medical expenses, this is the amount of the hospital bill which the trial judge admitted into evidence on testimony by plaintiff that she had received this statement for services rendered in connection with the surgery to her jaw. We find the trial judge erred in admitting the hospital bill for the purpose of proving the amount of the hospital charges. The hospital bill is hearsay. The medical expenses were not proved by competent evidence and cannot be allowed. We will reduce the judgment by the sum of $949. It is interesting to note that although the trial judge allowed the hospital expenses on the basis of the hospital bill, he did not allow recovery of Dr. Ardoin's bill or Dr. Perron's bill or certain small drug bills. The trial judge correctly disallowed these latter charges, because the evidence of them consisted only of the bills from the respective parties and was hearsay.
*1314 Bailey v. Jackson, 331 So.2d 498 (2d Cir. 1976) affirms a default judgment for amounts of the bills of the physician and the hospital, where there was a question as to whether these bills were hearsay. The testimony was not transcribed, but there was a statement of fact by the trial judge. The Court of Appeal states it could infer "that a proper foundation of these bills, i. e., testimony by plaintiff that they were incurred as a result of her injuries and were paid by her, was made before these bills were admitted as evidence." We express no opinion as to the correctness of the decision in Bailey v. Jackson. In any event, the present case is distinguished from Bailey on the basis that here the plaintiff testified only that she had received the hospital bill. She did not state that she had paid it. However, we express no opinion as to whether the hospital bill in the present case would be sufficient to prove these medical expenses if plaintiff had testified that she paid the bill.
Defendant cites Smith v. Doyle, 160 So.2d 791 (3rd Cir. 1964), contending that if on confirmation of default all of the damages awarded are not proved by competent evidence, the entire case must be remanded for a new trial on all issues. We do not agree that Smith v. Doyle is authority for a rigid rule. In Smith v. Doyle the court exercised its discretion under LSA-C.C.P. Article 2164 to remand the entire case for a new trial in the interest of justice. In the present case the interests of justice do not require that the entire case be remanded for a new trial on all issues, where the proof of one minor item of damages is hearsay and therefore not proved by competent evidence. To hold to the contrary would mean that in every appeal from a default judgment the entire case must be remanded for a new trial on all issues if the proof on one item of damages is not by competent evidence.
For the reasons assigned, the judgment appealed is amended to delete the award of $949 for medical expenses, thereby reducing the total award from the sum of $9,369 to the sum of $8,420. Otherwise, the judgment is affirmed at the cost of the defendant-appellant.
AFFIRMED, AS AMENDED.
STOKER, J., dissents and assigns written reasons.
DOMENGEAUX, J., dissents for the reasons assigned by STOKER, J.
STOKER, Judge, dissenting.
With respect, I dissent from the position taken by the majority in this case. Perhaps the majority opinion renders substantial justice between the parties. However, I believe in doing so, the majority violates fundamental principles governing the taking of judgments by default. I agree with the majority holding which denies a rehearing on the purely equitable grounds urged by defendant that he was confused by the receipt of service in a number of legal proceedings and was hindered by his inability to read.
The majority, of course, recognizes the general principal that hearsay is not admissible in default cases. As I read the majority opinion, it holds that a prima facie case of liability was proved exclusive of the hearsay evidence; therefore, the admission of hearsay in proving up the default was immaterial and harmless error. This holding may very well lead to the assumption by our trial courts and members of the bar that hearsay may be admitted in confirmations of default if the issues are otherwise proved by competent non-hearsay evidence. The danger in such an assumption lies in the possibility that hearsay may be used as corroboration, although it may not be relied upon as the sole proof. Certainly we cannot be sure that the hearsay admitted in this case did not, to some degree at least, enter into the trial court's considerations in fixing its award of general damages.
In this case, in addition to hearsay reflected in the quotations contained in the majority opinion relative to exhibits P-2, P-3, P-4, and P-5, the trial court admitted P-1. The exhibit consisted of a brief written medical report penned by Dr. Roderick P. Perron, a general practitioner. It is written on a prescription pad and consists of the words "Simple fracture left mandible *1315 needs wiring" and is dated September 20, 1978. This report was admitted without any foundation testimony at all, other than plaintiff's testimony that she was seen by Dr. Perron and was treated by him. The physician's brief written words purport to be a diagnosis of plaintiff's condition and injury. It was offered for proof of the matter asserted in the report. Therefore, it is a classical example of hearsay. The position of the majority is that all the admissible testimony leads to a justifiable inference that plaintiff sustained a broken jaw, and therefore, the physician's hearsay diagnosis added nothing. I cannot subscribe to this position.
Let us suppose that a plaintiff sustained a back injury of the typical sprain or strain variety for which there are few or only vague objective symptoms. Would not a written report from a physician, diagnosing such an injury and giving a prognosis, confirm an otherwise questionable claim? Even in this case, can it be assumed that the trial judge ignored the corroborative effect of Dr. Perron's handwritten note? Likewise, exhibit P-3, the statement for services of Dr. Didier Ardoin, II, lists him as "D.D.S." and as "a Professional Dental Corporation". This statement reflects that plaintiff had hospital surgery at Savoy Memorial Hospital, Mamou, Louisiana. His charge of $400, although not allowed by the trial judge, reveals something of the seriousness of the surgery as well as corroborating the fact that surgery was done. In like fashion, the hospital bill (P-2) lists a break down of charges, that is, what the charges were for. Even though the award for the hospital charges are reversed by the majority, can it be said that a knowledge of the hospital charges did not act as significant corroboration in the trial judge's mind concerning general damages? After all, in this case five separate documents consisting of pure hearsay were admitted. Do they not have quantitative effect through accumulation?
My concern here is not a mere wheedling over trivialities. It is a concern for the basic integrity of our law governing default judgments. In such cases the defendant is not before the court and is not represented. If the courts do not require strict compliance with the rules laid down, the protection guaranteed to defendant in default cases by our system of judicial administration may erode. The decision of the majority allows, on the ground of expediency a departure from the strict rule against hearsay. I do not think it is enough to disallow the item of special damages (the hospital charges) by reversing so much of the trial court's award as covered this item. In order to keep the rules viable and effective, I would reverse the entire judgment and remand the case for a new trial. Then we would be sure that the majority's construction of the rules will not form the basis for further relaxations. Therefore, I would follow the course taken by us in Smith v. Doyle, 160 So.2d 791 (La.App. 3rd Cir. 1964) and remand the case for a new trial on all issues under authority of LSA-C.C.P. art. 2164.