387 So.2d 1243 (1980)
Jack MORAN
v.
CANAL INDEMNITY INSURANCE COMPANY et al.
No. 13371.
Court of Appeal of Louisiana, First Circuit.
June 9, 1980.
*1244 J. Tom Anderson, Hammond, for plaintiff.
Sera H. Russell, III, Baton Rouge, for defendant.
Before ELLIS, CHIASSON and PONDER, JJ.
ELLIS, Judge:
This is a damage suit for personal injuries, arising out of an intersectional collision between a pickup truck, in which plaintiff Jack Moran was riding as a guest passenger; and a tractor-trailer rig owned by K. C. Forest Products, Inc., operated by Monroe Brumfield, Jr., and insured by Canal Indemnity Insurance Company. After trial on the merits, judgment was rendered in favor of plaintiff for $18,478.78, including $10,290.10 lost wages, $688.68 medical expenses and $7,500.00 in general damages for pain and suffering. Defendants have appealed.
In this court, it is argued that K. C. and Canal Indemnity should not have been found solidarily liable with Brumfield, because Brumfield was not in the course and scope of his employment when the accident happened; and that the awards for lost wages and pain and suffering were excessive.
The record shows that the accident happened at the intersection of East Morris Street and Range Road in Hammond, Louisiana. Sherman Kinchen, president of K. C., testified that, on the day of the accident, Brumfield had delivered a load of piling to New Orleans and was to return directly to Mr. Kinchen's house in Albany. Kinchen did not know what Brumfield was doing on Range Road in Hammond, and stated that Brumfield was not on company business. Brumfield was not called to testify in the case. It is based on this evidence that K. C. and Canal Indemnity are claiming that Brumfield was not in the course and scope of his employment.
There is a presumption that an employee who is involved in an accident while operating his employer's vehicle is within the course and scope of his employment. This presumption may be rebutted, but only with clear and convincing evidence. Williams v. Morgan, 356 So.2d 1029 (La.App. 1st Cir. 1977). The only evidence offered in this case is that Brumfield was not on the most direct route from New Orleans to his employer's place of business. There is no explanation of the apparent digression. We find this evidence alone to be insufficient to overcome the presumption.
On the question of damages, the record shows that the accident happened on April 28, 1978. Mr. Moran was taken to a hospital emergency room, where he was seen by Dr. John A. Walker. Dr. Walker examined plaintiff and ordered a series of X-rays, all of which proved to be normal. Plaintiff was found to have "mild multiple abrasions and soft tissue injuries." Dr. Walker also found that plaintiff had a mild cervical strain. Plaintiff was sent home from the emergency room.
On May 1, 1978, plaintiff again saw Dr. Walker, complaining of more pain. Dr. Walker felt that his complaints were to be expected, and did not recommend hospitalization, which he felt to be unnecessary. However, he told plaintiff that he would place him in the hospital if plaintiff wanted to be hospitalized. Plaintiff was hospitalized that day and given another series of X-rays and other tests, all of which proved to be normal. An orthopedist, called in consultation, confirmed Dr. Walker's diagnosis of mild abrasions, soft tissue injury and cervical strain, and recommended the prescription of a mild analgesic.
Plaintiff was discharged from the hospital on May 3rd. He last saw Dr. Walker on May 12,1978, with his pain less severe. His physical examination was normal except for mild tenderness in the back of his neck. Dr. Walker expected that plaintiff would be able to return to work in from two to six weeks.
Plaintiff testified that he remained in bed at home after the accident. He went to the hospital because his neck and shoulder were so stiff he could not get out of bed. *1245 After his hospitalization, he testified that he was almost entirely bedridden for two weeks. His wife had to help him on with his shirt because his shoulder was so stiff. He testified that he had dreams about the accident which necessitated his taking Valium in order to sleep.
He returned to the union hall on August 21st to seek work. However, he stated that he was still in pain and was looking for work only because he needed money. He returned to work finally on about September 1st, although, he stated, he was working in pain. As of the time of trial, on September 12, 1979, he stated that he still had occasional stiffness in his left shoulder, and was unable to operate a bulldozer because it necessitated his using his left arm too much. Of course, his original injury was to the neck and right shoulder.
Under the above circumstances, we find that the trial judge abused his discretion in awarding $7,500.00 for pain and suffering. Plaintiff's injuries were consistently characterized as mild by his physicians. Plaintiff himself could not recall which shoulder he had injured, when he was testifying about his alleged permanent disability. The doubt cast on plaintiff's credibility by this and other inconsistencies in his testimony convinces us that little weight should be given thereto. Accepting the medical testimony, which is uncontradicted except by plaintiff, we find that plaintiff's disability continued for two months after his injury. The most that should have been awarded for these mild injuries for that period of time is $3,500.00.
At the time of his injury, plaintiff was between jobs. He was a heavy equipment operator, with a base pay of $11.06 per hour. In addition, he would receive time and a half for any work done before 7:00 a. m. and after 3:30 p. m., and double time for work done on Saturdays, Sundays and holidays. There is testimony that plaintiff sometimes would work at a plant which was being reconditioned, in which case he would work a 10-hour per day, six-day week. Such a job is known as a "turnaround," and there is testimony that the months between April and September are the best months for turnarounds. There is, however, no specific evidence that turnarounds would have been available to plaintiff while he was disabled.
Plaintiff testified that when he returned to the union hall on August 21,1978, to seek work, there was eight hour per day employment immediately available. He learned that there was a turnaround available in about two weeks, and chose to wait for that so that he would be sure to be able to do the work.
The trial judge's award of $10,290.10 for lost wages was clearly predicated on the assumption that plaintiff would be working turnarounds throughout his disability. Defendants complain that the record does not justify such an assumption. They also claim that deductions should be made from an award for income tax which would have been withheld.
We are of the opinion that plaintiff has not proved the amount of lost wages awarded by the trial judge. The evidence does not preponderate to the effect that plaintiff would have worked turnarounds during his disability. We do find that there was work available, and believe that plaintiff should be compensated for 40 hours per week for a period of eight weeks at a rate of $11.06 per hour, or a total of $3,539.20. Defendants are incorrect in their assertion that we should deduct from the award income tax which would have been withheld from plaintiff's wages. See Reeves v. Louisiana and Arkansas Railway Co., 304 So.2d 370 (La.App. 1st Cir. 1974).
The judgment appealed from is therefore amended so as to reduce the amount thereof to $7,727.88, and, as amended, it is affirmed. All costs of this appeal shall be shared equally by the parties, and all other costs shall be borne by defendants.
AMENDED AND AFFIRMED.