402 So.2d 140 (1981)
Richard R. BRASSEAUX
v.
STAND-BY CORPORATION d/b/a Plantation Inn and Home Indemnity Company.
No. 14126.
Court of Appeal of Louisiana, First Circuit.
June 29, 1981.
Rehearing Denied August 25, 1981.
*142 Chris J. Roy, Gravel, Roy & Burnes, Alexandria, for plaintiff.
Rudolph R. Schoemann and James C. Cockfield, New Orleans, for defendants.
Before COVINGTON, CHIASSON and LEAR, JJ.
CHIASSON, Judge.
This suit for damages is before us on appeal for the second time following a remand to the trial court for the taking of a doctor's deposition and the reevaluation of the award of quantum after reviewing the deposition. See Brasseaux v. Stand-By Corp., 371 So.2d 1174 (La.App. 1st Cir. 1979). The trial court after remand maintained its original judgment in favor of plaintiff, Richard R. Brasseaux, and against Stand-By Corporation d/b/a Plantation Inn and its insurer, Home Indemnity Company, in the total sum of $48,327.00.
Plaintiff, while taking a shower at the Plantation Inn, was attacked by a number of bees which caused him to slip, injuring his left wrist. The trial court in a two day trial found the defendants negligent in failing to remove the bees from the premises and in failing to warn the patrons of the bees' presence. The trial was partially tried on December 6, 1977 and completed on April 4, 1978.
After judgment Brasseaux applied for a new trial contending a report of Dr. Dan Riordan, given to him on the second day of trial, should have been given to him earlier to enable him to secure the testimony of the doctor at trial. Dr. Riordan had examined the plaintiff in January of 1978 at the request of the defendants. The trial court denied the motion and the plaintiff perfected a devolutive appeal to this court. In our previous opinion, we held the trial court erred by failing to grant plaintiff a partial new trial for the purpose of obtaining the deposition of Dr. Riordan. We found the action of the defendants in failing to timely supply a copy of the report to plaintiff was improper. We pretermitted our discussion as to liability.
Subsequently, plaintiff was reexamined by the doctor and his deposition was taken. The defendants objected at the deposition to any inquiries concerning the second visit. The trial court sustained defendants' objection and limited the deposition to the first examination. After reviewing the deposition the trial court found it did not add to the weight of the prior testimony and let stand its previous award.
Plaintiff has again devolutively appealed the judgment of the trial court. In his assignments of error, he alleges the trial court erred in not considering the entire deposition of Dr. Riordan and erred in its awards for loss of past wages, loss of future wages, pain and suffering. Defendants answered the appeal seeking reversal of the trial court's finding of liability and, in the alternative, a reduction of quantum.
Plaintiff had been employed by Gianfala & Sons as a roustabout engaged in oilfield work since December of 1975. On June 3, 1976, he was working in the Morgan City area with a pusher and three other roustabouts. *143 The crew had finished their day's work and proceeded to register at the Plantation Inn near Morgan City.
Plaintiff and a co-employee were assigned Room 253, a second floor room at the corner of the motel. Brasseaux stated that once in the room, he proceeded to take a shower. Upon closing his shower curtain and turning on the cold water, a number of bees came from the direction of the shower head stinging him. Trying to ward off the bees, he slipped in the tub injuring his left wrist. Brasseaux, along with his roommate, Terry Burleigh, went to the front desk to complain about the incident. Michael Hebert, innkeeper of the motel, instructed Brasseaux to go to the hospital in Morgan City where his wrist was X-rayed and a splint was applied.
The plaintiff went home to Church Point that night and was treated by two orthopedic specialists in the Opelousas area. He testified he was never warned of the bees by the clerk who registered them and had no idea how the bees entered the room.
The defendants contend they were free of any negligence since the bees were a part of "Mother Nature" and they had no control over them. They knew of the existence of the bees on the outside of the building but had received no report of bees inside any of the rooms. The bees, they argue, come from the surrounding fields every spring.
Mr. Hebert, after being informed by his exterminating company that it could not remove the bees, contacted a beekeeper on June 2, 1976 to have the bees removed. Although there was some conflict as to when these men were contacted, the beehive was removed on June 5,1976, from the eve of the building.
Marie Fromenthal, the clerk on duty at the time Brasseaux and Burleigh registered, stated after checking them into the room she received a call complaining of bees in the room. She told the caller to come down and she would assign them a new room. She did not know who called and no one admitted at trial making the call.
Hebert testified that after he was informed of the incident he went with the men back to the room and only saw one dead bee near the lavatory. The defendants also emphasized the testimony of Burleigh, who was rooming with Brasseaux. Burleigh testified that upon entering the bathroom, Brasseaux stated he had fallen and injured his wrist. Burleigh did see some dead bees on the floor and a live one Brasseaux was defending himself from with his towel.
As a result of the fall, Brasseaux, who is right-handed, sustained a navicular fracture of his left wrist. The wrist had a preexisting fracture to the navicular bone and the two orthopedic surgeons found the bone very degenerative and recommended removal. Surgery was performed in which they inserted a prothesis in place of the bone and also inserted pins to keep it in place. A second surgery was required for the removal of the pins.
Plaintiff testified he is unable to return to the heavy manual labor required of him as a roustabout. He has tried other jobs but the pain and swelling in the wrist is unbearable. Gianfala & Sons, plaintiff's employer, has advanced him $160 a week since the injury. The employer and plaintiff contend the advance is a loan which the employer expects to be repaid. Brasseaux did testify he has worked for them after the accident on a number of occasions but was never paid for his services. On the first day of trial representatives of the company testified the loan was only an oral agreement between the parties. On the second day plaintiff introduced a promissory note in the amount of $18,327 which represents money the employer had loaned him from the date of his injury. Said sum represents the $160 weekly payment plus an additional amount to pay for plaintiff's insurance premiums. An assignment was also introduced assigning to Gianfala & Sons a right in any recovery plaintiff might receive in this litigation.
We will first consider the question of liability since we pretermitted that issue in the first appeal. The trial court found *144 that the accident occurred as contended by the plaintiff. We find there is a causal relationship between the bees attacking and stinging the plaintiff and his slipping and falling in the shower injuring his left wrist.
We next consider the duty owed by the motel's personnel toward this plaintiff-guest. The duty owed by an innkeeper to his guests or patrons is that of exercising reasonable and ordinary care including maintaining the premises in a reasonably safe and suitable condition and the warning of guests or patrons of any hidden or concealed perils which are known or reasonably discoverable by the innkeeper. Brown v. Southern Ventures Corporation, 331 So.2d 207 (La.App. 3rd Cir. 1976), writ refused 344 So.2d 211 (La.1976) and Jarvis v. Prout, 247 So.2d 244 (La.App. 4th Cir. 1971).
The trial court found that the defendants breached this duty in failing to remove the bees and in failing to warn the plaintiff that there were bees about the premises. We agree with this finding. The bees were known to be on the outside of the building for a sufficient amount of time that the defendants could have had them removed. In addition, the defendants should have warned occupants of the rooms in the immediate vicinity of the existence of bees in the area and the possibility of the bees entering the rooms. We find the risk involved in this case, plaintiff slipping in a shower from warding off bees, would be encompassed within the duty to keep the premises reasonably safe and warning him of this hidden peril.
Defendants argue that they had no control over the bees and that they were not the insurer of safety of their guests under the theory of strict liability. Because we hold defendants are liable under the negligence theory we need not address the theory of strict liability. With reference to not having control over "Mother Nature's" insects, we agree with defendants but that does not relieve them of the duty to inspect their premises and rid it of any perils that might confront their patrons or guests. In this case the defendants, knowing of the presence of the beehive, should have had the hive removed or at least warned their patrons of its presence. Additionally, we find no merit in defendants' contention that plaintiff was contributorily negligent or that he assumed the risk.
We next consider the extent of damages occasioned to this plaintiff. The trial court awarded plaintiff, a thirty-one year old worker with a seventh grade education, $18,327 for loss of past wages and $30,000 for loss of future wages, pain and suffering and medical expenses.
Although not enumerated by the trial court, there were four items of damages in its judgment. Each item should be specifically listed since the proof and recovery of each item is distinctively different from the others. See Reeves v. Louisiana and Arkansas Railway Co., 304 So.2d 370 (La.App. 1st Cir. 1974).
The first item to be discussed is plaintiff's claim for loss of past wages. The trial court awarded Mr. Brasseaux $18,327 for this item being the amount his employer gave him from the time of his injury through the trial. Plaintiff is seeking an increase to $22,448 which amount represents a salary of $4 an hour for 40 hours and $6 an hour for 14 overtime hours per week from the time of injury to trial.
Defendants argue Brasseaux did not lose any wages since there was a stipulation that his employer paid him in lieu of compensation and, alternatively, if wages are awarded, it should be net wages and not gross wages.
On the first day of trial, while the plaintiff was being cross-examined in regards to the $160 a week being advanced to him, plaintiff's counsel made the following stipulation:
"Your Honor, we'll stipulate that in lieu that in lieu of compensation these people started paying him $160.00 every week in lieu of comp."
The court accepted the stipulation and it is binding on all parties. Campbell v. Prejean, 392 So.2d 747 (La.App. 3rd Cir. 1980). The trial court in its written reasons concluded *145 the weekly payments were wages in lieu of compensation. This holding along with the fact that the employer has not intervened in this suit seeking reimbursement are two crucial factors in deciding whether the plaintiff is entitled to recover past lost wages.
Because the payments were in lieu of compensation they cannot be classified as "purely gratuitous", which would justify a conclusion that plaintiff did not suffer a loss of wages. Jasper v. Garcia, 280 So.2d 389 (La.App. 4th Cir. 1973).
Normally, when an employer or his insurer has paid workmen's compensation to an injured employee and the employee files suit against a third party tortfeasor, the employer or the insurer intervenes in the suit seeking to recoup the compensation it has paid to the injured employee. La.R.S. 23:1101-1103. The employer has not intervened in this suit and defendants contend, if plaintiff is allowed to recover from them, he would have double recovery. We find no merit in this contention.
Professor Malone and Johnson explain this type of situation in their workmen's compensation treatise, as follows: "* * * (T)he third person is not entitled to a credit against the amount of damages awarded in the employee's suit for the amount of compensation paid the employee which would have been claimed by the employer or insurer if there had been an intervention. This is merely a recognition of the well established rule in tort law that where an injured party proceeds against the wrongdoer for damages, he is entitled to an award for the full amount of his loss, even though the loss is partially or wholly made good by an insurer. Such a result does not amount in truth to `double recovery' or at least it is not one that is to be regarded as offensive. The primary objection to `double recovery' is that it makes a wrongdoer pay twice for the same item, and thus he pays more than would be proper. But in this situation, the wrongdoer pays only what he would have been obliged to pay had the Act never existed: a complete tort recovery. He pays no more because the employer or the insurer fails to intervene, and thus there is `double recovery' only in the sense that the employee might retain some additional amounts because the employer or insurer failed to exercise the rights granted to it under the Act." (Footnotes omitted). 14 La.Civ.L.Tre. (Malone & Johnson) § 369, pgs. 181-182. Also see Bennett v. U. S. Fid. & Guar. Co., 373 So.2d 1362 (La.App. 1st Cir. 1979) and Nunez v. Modern Woodcraft Co., 197 So.2d 339 (La.App. 4th Cir. 1967).
Following this rationale, we find the trial court's award to the plaintiff for loss of wages is correct, but we must modify the amount. At the time of the injury plaintiff was earning $3.00 an hour for 40 hours and $4.50 an hour for 14 overtime hours per week. From the date of the injury until trial, a period of approximately 92 weeks, plaintiff worked 27 days or 5 2/5 weeks. Calculating the gross weekly wages at $183.00 times the number of weeks (863/5), plaintiff suffered a loss of $15,847.80 in past wages. Moran v. Canal Indem. Ins. Co., 387 So.2d 1243 (La.App. 1st Cir. 1980). The amount advanced by the employer or the amount of the assignment cannot be used as the basis for determining the amount of lost wages. We accordingly reduce the trial court's award for loss of past wages.
The next item to be discussed is the medical expenses incurred by the plaintiff because of the injury. At trial plaintiff identified certain documents as bills received by him in conjunction with his injuries. Defendants objected to the introduction of these documents at that time. On appeal defendants contend a proper predicate had not been laid for the introduction of these documents or plaintiff's testimony concerning them.
The medical expenses which are claimed by the plaintiff through the introduction of the bills are as follows:

P-4 St. Landry Clinic, Inc. $1,342.70
P-5 St. Landry Clinic, Inc. 557.85
P-6 Opelousas Orthopedic Clinic 1,613.50
P-7 Orthopedic Equipment & Surgical
 Implant Supply Co. 125.00
P-8 Dr. S. J. Rozas 25.00
P-9 Lakewood Hospital 36.80
P-10 Opelousas Rehabilitation Clinic 375.00
P-11 Drugs from Thrift-T-Way Pharmacy 114.92

*146 Defendants contend all these medical expenses were improperly introduced except P-4 and P-5 which were certified as true copies by the administrator of the St. Landry Clinic in accordance with the provisions of La.R.S. 13:3714. Defendants cite the case of Jones v. Ledet, 383 So.2d 1308 (La. App. 3rd Cir. 1980) for the proposition that the other bills were hearsay evidence and not competent evidence. In Jones, supra, at page 1313, the court was faced with proof of medical expenses in a default judgment and concluded:
"* * * We find the trial judge erred in admitting the hospital bill for the purpose of proving the amount of the hospital charges. The hospital bill is hearsay. The medical expenses were not proved by competent evidence and cannot be allowed. * * *" (See also Cloney v. Travelers Insurance Company, 253 So.2d 83 (La.App. 1st Cir. 1971) and Vidrine v. Sentry Indem. Co., 341 So.2d 558 (La.App. 3rd Cir. 1976). Compare Smith v. Early Am. Ins. Co. of Montgomery, Ala., 344 So.2d 397 (La.App. 1st Cir. 1977).
The remaining bills are hearsay and inadmissible to prove the amount of the charges since timely objection was made by the defendants. Defendants concede, however, the charges represented by P-4 and P-5. We thus award plaintiff the sums of those two bills.
In addition, P-6 was testified to by Dr. Mayers in his deposition on page 23 as his bill for services rendered to Mr. Brasseaux because of his injuries. We therefore find competent evidence for this item of damage and allow its recovery. The remaining bills were not testified to by anyone except the plaintiff and therefore must be excluded as not being proved by competent evidence.
As to the claim for loss of future wages or loss of earning capacity, our Supreme Court in the case of Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976) held:
"But the full indemnification to which an injured party is entitled under Article 2315 (Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971)) includes damages for decreased earning capacity which is determined by deducting plaintiff's earning ability after the injury from his earning ability immediately prior to the injury rather than by deducting his income after the injury from his income prior to the injury. * * *"
Further, the Supreme Court in Robinson v. Graves, 343 So.2d 147 (La.1977) stated:
"Future loss of earnings cannot be calculated with absolute certainty; this court has recognized that damages for the loss of future earnings are somewhat speculative in character. See e. g., Viator v. Gilbert, 253 La. 81, 216 So.2d 821 (1968). Absent an abuse of discretion by the trier of fact, however, this degree of uncertainty does not permit the reviewing court to substitute its judgment for that of the trial court merely because the reviewing court believes that a different award would have been more appropriate. * * *" See Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980).
The amount remaining after deducting the medical expenses is the sum of $26,485.95 for both loss of earning capacity and pain and suffering. Considering the speculative nature of loss of earning capacity or loss of future wages, the great discretion given the trial judge in fixing the amount of the award for pain and suffering, the injury suffered by plaintiff and the entire record which we have completely reviewed, we find the trial judge did not abuse his much discretion in awarding $26,485.95 for these two items of damages. Reck v. Stevens, 373 So.2d 498 (La.1979).
Plaintiff contends the entire report and the entire deposition of Dr. Riordan should have been considered by the trial court and the awards for general damages should be increased based upon those documents. The trial court in supplemental reasons for judgment reinstated its initial award of $30,000 finding that the deposition did not materially add to the testimony already considered. We agree with this assessment and find no merit in this argument.
For the reasons assigned, the judgment of the trial court is amended to reduce the *147 award for loss of past wages to the sum of $15,847.80 and affirmed in all other respects.
Costs of this appeal are assessed one-half to plaintiff and one-half to defendants.

AMENDED AND AFFIRMED.