McDONALD, J.
In this appeal, a plaintiff in a tort suit challenges a judgment denying his claim for medical expenses against the tortfeasor's insurer. The trial court determined that the plaintiff could not recover the medical expenses because his employer's workers' compensation insurer had previously paid them. We find the trial court erred and amend the judgment to include an award for the medical expenses.
FACTUAL AND PROCEDURAL BACKGROUND
On November 21, 2014, Marcus Rene Slaughter, an employee of Garda CL Southeast, Inc. (Garda), and Ernest "EJ" Howard Jr., an employee of Doug Ashy Building Materials (DABM), were driving in adjacent lanes on Evangeline Thruway in Lafayette Parish, Louisiana. Both men were in the course and scope of their employment and were driving vehicles owned by their respective employers. Mr. Slaughter left his lane of travel and collided with Mr. Howard, who struck his right knee on the dashboard and twisted his back. Shortly after the accident, Mr. Howard twice sought medical treatment for right knee and lower back pain. When the pain continued, Mr. Howard was referred to Dr. Seth Rosenzweig, an orthopedic surgeon, in January 2015. Ultimately, in February 2015, Dr. Rosenzweig performed arthroscopic surgery to repair a torn meniscus and to debride a partial anterior cruciate ligament tear in Mr. Howard's right knee. Mr. Howard followed up with several weeks of physical therapy and remained out of work until mid-March 2015. It is undisputed that DABM's workers' compensation insurer (DABM's insurer) paid Mr. Howard's medical expenses and also paid workers' compensation benefits to Mr. Howard while he did not work.
Mr. Howard filed this suit against Mr. Slaughter, Garda, and Garda's automobile insurer, National Union Fire Insurance Company of Pittsburgh, Pa. (NUFIC). DABM's insurer did not intervene in the suit to recover the medical expenses it paid on Mr. Howard's behalf. In a partial summary judgment, the trial court determined that Mr. Slaughter was solely at fault in causing the accident. And, after a bench trial, the trial court determined the accident caused Mr. Howard's injuries. In an earlier consent judgment, Garda and NUFIC had admitted solidary liability with Mr. Slaughter, and that he was an insured under NUFIC's policy, in the event judgment was rendered against *7 him. By judgment signed on February 15, 2017, the trial court awarded Mr. Howard $3,900 in lost wages and $37,500 in general damages against the defendants.[1] In reasons for judgment, the trial court stated that its award to Mr. Howard did not include the $33,793 in medical expenses DABM's insurer paid on Mr. Howard's behalf because such was not recoverable under Louisiana law.
Mr. Howard appeals from the adverse judgment, contending that, even though DABM's insurer paid his medical expenses, the trial court erred in failing to award those expenses to him. In response, the defendants contend they were solidarity liable with DABM and its insurer for Mr. Howard's medical expenses, and, as such, DABM's insurer's payment of these expenses discharged the defendants' obligation to pay them.
STANDARD OF REVIEW
In reviewing this matter, we apply the de novo standard of review. The issues involved require the proper interpretation of statutes and an analysis of the applicability of the collateral source rule, both of which are questions of law. Silver Dollar Liquor, Inc. v. Red River Parish Police Jury, 10-2776 (La. 9/7/11), 74 So.3d 641, 646 (statutory interpretation); Crockerham v. Weyerhaeuser Holden Wood Products, 16-0331 (La. App. 1 Cir. 6/2/17), 223 So.3d 533, 537, writ denied, 17-1121 (La. 10/27/17), 228 So.3d 1232 (statutory interpretation); Madrid v. AEP River Operations, LLC, 14-0044 (La. App. 4 Cir. 10/15/14), 151 So.3d 897, 901, writ granted, 14-2384 (La. 2/27/15), 159 So.3d 1062 (collateral source rule).
SOLIDARY OBLIGORS UNDER THE LOUISIANA WORKERS' COMPENSATION ACT
Under LSA-C.C. art. 2315, a tortfeasor is obliged to repair the damage he has wrongfully caused to an innocent accident victim. And, under the Louisiana Workers' Compensation Act (LWCA), LSA-R.S. 23:1020.1, et seq., an employer and/or its workers' compensation insurer, is obliged to pay an injured employee for necessary medical treatment caused by a work-related injury. See LSA-R.S. 23:1203A and 1168A(1). Sometimes, a workers' compensation insurer is required to pay, subject to statutory considerations, certain amounts that the injured employee is entitled to recover as damages from the tortfeasor. See Bellard v. American Central Ins. Co., 07-1335 (La. 4/18/08), 980 So.2d 654, 664-65. In this case, DABM's insurer and the defendants share coextensive liability for Mr. Howard's medical expenses resulting from injury caused by Mr. Slaughter. Id. at 665. As decided by the Louisiana Supreme Court in Bellard, this obligation is a solidary obligation even though the sources and amounts of the *8 obligation differ. Id. at 663-66. Also see Williams v. Sewerage & Water Bd. of New Orleans, 611 So.2d 1383, 1388 (La. 1993) (finding the employer's liability for workers' compensation death benefits and the tortfeasor's liability for wrongful death and survival benefits to be a solidary obligation); Olivier v. City of Eunice, 11-1054 (La. App. 3 Cir. 6/6/12), 92 So.3d 630, 638-39, writ denied, 12-1570 (La. 10/12/12), 98 So.3d 874 (finding the victim's employer and the victim's health insurer solidarity liable for the victim's medical expenses, even though the sources and amounts of liability differed).
Generally, one solidary obligor's payment of a debt to an obligee relieves other solidary obligors of that liability. See LSA-C.C. art. 1794. In this case, however, the solidary obligation exists between a workers' compensation insurer and a tortfeasor. Louisiana Revised Statute 23:1101A specifically provides that an injured employee's receipt of workers' compensation benefits shall not affect his rights against a third person (e.g., a tortfeasor) who is legally liable to pay damages for injuring the employee. See LSA-R.S. 23:1101C, defining "third person." If there is a conflict between two statutes that deal with the same subject matter, the statute specifically directed to the matter at issue prevails over a more general statute. Burge v. State, 10-2229 (La. 2/11/11), 54 So.3d 1110, 1113 (per curiam). Thus, LSA-R.S. 23:1101A's specific directive that an injured employee's rights not be affected by his receipt of workers' compensation benefits prevails over LSA-C.C. art. 1794's more general directive that one solidary obligor's payment of a debt relieves all other solidary obligors of liability. Thus, DABM's insurer's payment of Mr. Howard's medical expenses cannot affect Mr. Howard's rights against the defendants, notwithstanding that DABM's insurer has paid the debt that the defendants solidarily owed with it. Accord Westgate, LLC v. Eaton Corp., 12-1098 (La. App. 1 Cir. 2/15/13), 113 So.3d 238, 242 (A grant of contribution among solidary obligors under the civil code cannot prevail over the right of indemnity granted to a statutory employer under the workers' compensation statute governing liability of principal contractors.); Edwards v. Sawyer Indus. Plastics, Inc., 31,316 (La. App. 2 Cir. 11/1/00), 790 So.2d 29, 32, writ granted, 00-3240 (La. 2/2/01), 783 So.2d 376 (The workers' compensation statute mandating that expert fees be fixed in final judgment prevails over general statute permitting the deferral of setting such costs until after final judgment rendered.); Andre v. Construction Material Shop, 93-1212 (La. App. 1 Cir. 3/11/94), 633 So.2d 1313, 1318 (The workers' compensation statute regarding service of process governs over the code of civil procedure's more general article regarding same.)
COLLATERAL SOURCE RULE
Further, even if LSA-R.S. 23:1101A did not exist, there are instances when the collateral source rule overrides principles of solidarity. In Cutsinger v. Redfern, 08-2607 (La. 5/22/09), 12 So.3d 945, 951-53, and in Bellard, 980 So.2d at 670-71, the Louisiana Supreme Court analyzed the strong public policy concerns supporting the collateral source rule vis-a-vis solidary obligors to determine whether these public policies may override principles of solidarity. Linder the particular facts of Cutsinger and Bellard, the Supreme Court ultimately concluded that the collateral source rule was inapplicable, because the policies underlying the rule were not advanced. Cutsinger, 12 So.3d at 955 ; Bellard, 980 So.2d at 670. However, if the principles of solidarity were absolute and could not be overridden by applying the collateral source rule, then there would *9 have been no reason for the Supreme Court to conduct the analysis, not once, but twice. See Howard v. United Servs. Auto. Ass'n, 14-1429 (La. App. 1 Cir. 7/22/15), 180 So.3d 384, 403 (Welch, J., concurring), writ denied, 15-1595 (La. 10/30/15), 179 So.3d 615. Thus, we conduct a similar analysis here.
The collateral source rule provides that a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies the plaintiff receives from sources independent of the tortfeasor's procuration or contribution. Bozeman v. State, 03-1016 (La. 7/2/04), 879 So.2d 692, 698. Under the rule, payments received from an independent source are not deducted from the award a tort victim would otherwise receive from the tortfeasor, because the tortfeasor is not allowed to benefit from outside benefits provided to the tort victim. Id. Examples of collateral sources that may provide compensation for a tort victim's injuries include Medicare, Medicaid, workers' compensation, unemployment compensation, sick pay and related employee benefit programs, Social Security, pension and retirement funds, and benefits provided gratuitously by private parties or government agencies under compulsion of neither contract nor statute. Bozeman, 879 So.2d at 706 (Knoll, J., concurring). The rule reflects the beliefs that the tortfeasor should not profit from the victim's prudence in obtaining insurance, or benefitting from other sources, and that reducing the amount the tortfeasor would have to pay hampers the deterrent effect of the law. Bellard, 980 So.2d at 668.
In determining whether the collateral source rule applies, two considerations govern: (1) whether applying the rule will further the major policy goal of tort deterrence; and (2) whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his patrimony because the benefit was available, such that he is not reaping a windfall or double recovery. Cutsinger, 12 So.3d at 953. When the tortfeasor is held liable, even though the plaintiff has benefitted from a collateral source, tort deterrence is furthered. See Howard, 180 So.3d at 405 (Welch, J., concurring) (Applying the collateral source rule when a tortfeasor seeks a reduction of damages serves the good of deterring wrongful conduct.) And, when the victim's patrimony has been diminished by the availability of the collateral source, he is not doubly recovering. For example, such exists when the victim's collateral source of benefits is insurance for which he has paid premiums. See Griffin v. La. Sheriff's Auto Risk Ass'n, 99-2944 (La. App. 1 Cir. 6/22/01), 802 So.2d 691, 714-15, writ denied, 01-2117 (La. 11/9/01), 801 So.2d 376. Conversely, when the tortfeasor is not the one from whom recovery is sought, tort deterrence is not furthered. For example, such exists when an employer's uninsured motorist insurer seeks a reduction in damages for payments made by the employer and/or its workers' compensation insurer to the injured employee, rather than when it is the tortfeasor or her insurer who seeks the reduction. See Bellard, 980 So.2d at 670-71. And, when the victim's patrimony has not been diminished by the availability of the collateral source, he would doubly recover. For example, a patient who receives Medicaid benefits gives no consideration for these free benefits and, as such, he cannot recover amounts written off by healthcare providers as a result of contractual arrangements with Medicaid. See Benoit v. Turner Indust. Group, LLC, 11-1130 (La. 1/24/12), 85 So.3d 629, 635 (per curiam); Bozeman, 879 So.2d at 705.
*10 In Cutsinger, the Supreme Court stated that the primary policy reason to apply the collateral source rule is tort deterrence and that, while it is important to consider whether the plaintiff paid for the collateral source or suffered some diminution in her patrimony due to the availability of the benefit to determine whether a double recovery would result from applying the rule, this consideration alone is not the determinative factor in deciding whether the collateral source rule applies. Cutsinger, 12 So.3d at 954. Thus, after Cutsinger, the proper approach to determining whether the collateral source rule applies requires an analysis of the facts of each case in light of the above two considerations, with emphasis placed on the primary policy goal of tort deterrence. See Cutsinger 12 So.3d at 952, 954-55 ; Johnson v. Neill Corp., 15-0430 (La. App. 1 Cir. 12/23/15), 2015 WL 9464625 at *10 (unpublished), writs denied, 16-0137, 16-0147 (La. 3/14/16), 189 So.3d 1070, 1070.
In this case, applying the collateral source rule will further tort deterrence. Mr. Slaughter was the sole cause of the accident and of Mr. Howard's injuries. By holding the defendants liable for Mr. Howard's medical expenses, the tortfeasor, Mr. Slaughter, will be deterred from careless driving; Garda may invest in accident avoidance to further avoid increased insurance premiums; and, NUFIC will pay under its policy. The defendants should not benefit because Mr. Howard had workers' compensation benefits available to him. Allowing the defendants any credit or benefit from the victim's receipt of workers' compensation benefits hampers the deterrent effect of tort law and provides disincentive for the tortfeasor to conform to standards of reasonableness. Accord Howard, 180 So.3d at 405 (Welch, J., concurring).
Next, as to the second consideration, we cannot say that Mr. Howard's patrimony was diminished by DABM's insurer's payment of his medical expenses. An employee provides no consideration for workers' compensation benefits (which include medical expense payments), and such payments cannot be considered a fringe benefit in the nature of deferred compensation that would otherwise be available to the plaintiff but for his injury. Bellard, 980 So.2d at 669-70. But, even when the victim's patrimony is not diminished, the question then becomes, "who should gain the benefit of the collateral source, the injured victim or the tortfeasor?" Johnson, 2015 WL 9464625 at *11.
In Royer v. State, Department of Transp. & Dev., 16-534 (La. App. 3 Cir. 1/11/17), 210 So.3d 910, 922, writ denied, 17-0288 (La. 4/24/17), 221 So.3d 69, the Third Circuit answered the above question by concluding that it is the injured victim who benefits. In Royer, as in the instant case, the injured victim's patrimony was not diminished, because a workers' compensation insurer paid his medical bills, but tort deterrence was furthered, because it was the tortfeasor who was denied a credit for the payment. The Royer court reasoned that the overriding policy of tort deterrence outweighed the concern of double recovery. Id. Given the Cutsinger court's instruction that the primary policy reason for applying the collateral source rule is indeed tort deterrence, we conclude, as did the Royer court, that it is the injured victim, and not the tortfeasor, who should benefit from the collateral source where it was obtained neither by the tortfeasor's procuration nor by a diminution of the injured victim's patrimony. See Cutsinger, 12 So.3d at 952. Thus, applying this rationale here, under our de novo review of this legal issue, we find the trial court should have applied the collateral source rule by holding the defendants liable to Mr. Howard for the medical expenses DABM's insurer paid on his behalf. Accord *11 Johnson, 2015 WL 9464625 at *11 (Even if the victim suffered no diminution of her patrimony, the tortfeasor should not benefit from the collateral source.)
We acknowledge that applying the collateral source rule here will result in what the defendants argue is a "double recovery" to Mr. Howard, since DABM's insurer did not intervene in Mr. Howard's suit. Normally, when an insurer has paid medical benefits to an injured employee, and the employee files suit against a third party tortfeasor, the insurer does intervene in the suit to recoup the medical benefits it paid on the injured employee's behalf. See LSA-R.S. 23:1101-1103; Mitchell v. Abernathy, 00-2375 (La. App. 1 Cir. 2/15/02), 815 So.2d 110, 112 ; writ denied, 02-1392 (La. 9/20/02), 825 So.2d 1169 ; Brasseaux v. Stand-By Corp., 402 So.2d 140, 145 (La. App. 1 Cir.), writ denied, 409 So.2d 617 (La. 1981). However, in Brasseaux, 402 So.2d at 145, where like the present case, no intervention was filed, this Court rejected this "double recovery" argument, relying on 14 La. Civ. Law. Treatise, Malone and Johnson, Workers' Compensation Law and Practice, § 369, pp. 279-80 (5th ed.), as follows:
If, in the end, the [workers' compensation insurer] does not intervene and does not bring a separate suit, what is the effect on the employee's tort suit? ... [T]he third person is not entitled to a credit against the amount of damages awarded in the employee's suit for the amount of compensation paid the employee which would have been claimed by the ... insurer if there had been an intervention. This is merely a recognition of the well established rule in tort law that where an injured party proceeds against the wrongdoer for damages, he is entitled to an award for the full amount of his loss, even though the loss is partially or wholly made good by an insurer. Such a result does not amount in truth to "double recovery" or at least it is not one that is to be regarded as offensive. The primary objection to "double recovery" is that it makes a wrongdoer pay twice for the same item, and thus he pays more than would be proper. But in this situation, the wrongdoer pays only what he would have been obliged to pay had the Act never existed: a complete tort recovery. He pays no more because ... the insurer fails to intervene, and thus there is "double recovery" only in the sense that the employee might retain some additional amounts because the ... insurer failed to exercise the rights granted to it under the Act. (Footnotes omitted.)
In line with the above reasoning, we follow Brasseaux and reject the defendants' argument that awarding Mr. Howard his medical expenses will result in double recovery.
When a mistake of law forecloses factfinding, but where the record is otherwise complete, an appellate court should, if it can, render judgment on the record. LSA-C.C.P. art. 2164 ; Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La. 1980). As explained, the trial court legally erred in failing to award Mr. Howard the medical expenses DABM's insurer paid on his behalf. At the trial of this matter, Mr. Howard introduced evidence documenting that his medical expenses were $33,793. (R210-12) Because this record evidence substantiates the medical expenses, we amend the judgment to award Mr. Howard this amount.
CONCLUSION
In sum, after a de novo review, we conclude the trial court legally erred in failing to award Mr. Howard the $33,793 in medical expenses DABM's insurer paid on Mr. Howard's behalf. First, the LWCA specifically *12 provides that Mr. Howard's receipt of workers' compensation benefits shall not affect his rights against the defendants, who are legally liable to pay damages for injuries Mr. Slaughter caused Mr. Howard. This specific directive of workers' compensation law prevails over the general rule that DABM's insurer's payment of Mr. Howard's medical expenses relieves the defendants of the solidary obligation they owe to Mr. Howard together with DABM for these expenses. Second, notwithstanding the LWCA, the collateral source rule overrides principles of solidarity in this case and prohibits the defendants from benefitting from DABM's insurer's payment of Mr. Howard's medical expenses. Applying the collateral source rule in this case will further the rule's major policy goal of tort deterrence. And, even though Mr. Howard's access to workers' compensation benefits did not diminish his patrimony, our jurisprudence requires that he, as the tort victim, gain the benefit of the collateral source rule, rather than the defendants, as tortfeasors.
Thus, for reasons expressed herein, we amend the February 15, 2017 judgment to award Mr. Howard $33,793 in medical expenses against Marcus Rene Slaughter; Garda CL Southeast, Inc.; and National Union Fire Insurance Company of Pittsburgh, Pa., in solido. This amount is in addition to the judgment's award of $3,900 in lost wages and $37,500 in general damages to Mr. Howard. We assess costs of this appeal to Marcus Rene Slaughter; Garcia CL Southeast, Inc.; and National Union Fire Insurance Company of Pittsburgh, Pa., in solido.
JUDGMENT AMENDED AND AFFIRMED AS AMENDED.
Whipple, C.J. concurs: Consideration was given herein by virtue of the fact that appellant worked, earned, and obtained such benefits as an incident of and pursuant to his employment.

The February 15, 2017 judgment stated that damages against the defendants would include "clerk costs and special costs in an amount to be determined by the Court on a motion to fix costs ...." Mr. Howard then filed a motion to fix costs with supporting evidence. On April 25, 2017, the trial court signed a second judgment against the defendants for "special costs in the amount of $5,064.64 and clerk costs ...." In his motion for appeal, Mr. Howard appealed from both the February 15 and April 25 judgments. The clerk of court prepared two separate records and this Court lodged two appeals-the appeal from the February 15 judgment under this Court's docket number 2017 CA 1221, and the appeal from the April 25 judgment under this Court's docket number 2017 CA 1222, also decided this day. This Court denied Mr. Howard's motion to consolidate the appeals but ordered that the appeals be assigned to the same panel and docket. Mr. Howard filed identical briefs in both appeals and plainly states that his sole challenge is to the trial court's denial of medical expenses as reflected by the February 15 judgment.