# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-IA-00592-SCT

*MISSISSIPPI DEPARTMENT OF HUMAN
SERVICES AND RICHARD BERRY, IN HIS
CAPACITY OF EXECUTIVE DIRECTOR OF
MDHS*

*v.*

*D.C., BY AND THROUGH HIS NEXT FRIEND
AND NATURAL MOTHER, GEORGIA MORIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/02/2018 |
| TRIAL JUDGE: | HON. MICHAEL M. TAYLOR |
| TRIAL COURT ATTORNEYS: | JOSEPH P. DURR |
| | C. STEPHEN STACK, JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | C. STEPHEN STACK, JR. |
| ATTORNEYS FOR APPELLEES: | JOSEPH P. DURR |
| | W. BRADY KELLEMS |
| | CHELI K. DURR |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED IN PART |
| | AND REMANDED - 08/15/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises from D.C.'s[1] civil suit against Jason Case, the Mississippi

Department of Human Services (DHS) and Richard Berry, in his capacity as executive

---

[1] The minor's initials are used in order to protect his anonymity.

director of DHS.[2] D.C., a minor foster child, alleged that Case, his foster parent, sexually abused him. DHS removed D.C. from Case's home and a subsequent investigation substantiated the alleged abuse. DHS does not contest that Case abused D.C. In his complaint, D.C. alleged negligence and gross negligence on behalf of DHS and Berry in the licensing of the foster home and the lack of care and treatment to D.C., both during his placement and after DHS removed D.C. from the foster home.

¶2. After a period of discovery, DHS filed a motion for summary judgment. It maintained that it was entitled to immunity under Mississippi Code Section 43-15-125 (Rev. 2015) and Mississippi Code Section 11-46-9(1)(d) (Rev. 2012). Without any noted reference to Section 43-15-125, the circuit court denied DHS's motion for summary judgement. DHS filed a petition for interlocutory appeal, which a panel of this Court granted. After review of the record, we affirm in part and reverse in part the circuit court's denial of summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶3. Jason Case applied with DHS[3] to be a foster parent. DHS approved his application after Case passed the statutorily required background checks. DHS placed B.W.—a foster child—with Case before it placed D.C. in Case's home. DHS received allegations of

---

[2] Unless otherwise noted, later references to "DHS" includes Berry in his capacity as executive director.

[3] The Mississippi Department of Child Protection Services now oversees foster children and foster parents. Miss. Code Ann. § 43-26-1 (Supp. 2018) ("The Commissioner of Child Protection Services and the Executive Director of the Department of Human Services shall develop and implement a plan for the orderly establishment of the Department of Child Protection Services and its transition from the Office of Family and Children's Services of the Department of Human Services."). For consistency with the record, we will continue to refer to DHS.

physical abuse by Case against B.W. and his brother D.W. DHS determined that the allegations of physical abuse were unsubstantiated.

¶4. DHS then placed D.C., a minor child, in the home of Jason Case on November 4, 2011. A DHS caseworker visited D.C. in Case's home on November 17, 2011, and December 7, 2011. DHS also held a conference that D.C.'s family members attended to discuss permanent plans for D.C.

¶5. On January 1, 2012, D.C. called Lastangela Thomas, a DHS caseworker, and informed her that Case had sexually abused him the previous night. According to D.C., Case had provided D.C. alcohol on December 31, 2011, and had proceeded to sexually assault him. Allegedly, Case encouraged D.C. to drink to the point of intoxication. Once D.C. was drunk, D.C. maintained that Case placed him in a recliner in the living room, fondled him and performed oral sex on him.

¶6. Upon hearing from D.C., Thomas immediately met with D.C. and his mother. The sheriff's department was contacted, and D.C. was taken to the hospital. DHS also contacted a judge and sought to have D.C. removed from Case's home. The judge authorized the placement of D.C. with his mother.

¶7. Next, DHS conducted an investigation into D.C.'s allegations. During the investigation, DHS interviewed B.W. and D.W. They reported (for the first time, according to DHS) that Case had sexually abused them as well.

¶8. On March 18, 2013, D.C. (by and through his next friend and natural mother, Georgia Morin) sued Case, DHS, Richard Berry (in his capacity as executive director of DHS) and

John Does One through Five. D.C. alleged that DHS failed to properly monitor D.C.'s care and treatment and failed to adequately investigate Case's "prior conduct and propensities." D.C. also claimed that DHS had failed to take reasonable steps to protect him by placing him in a safe home and removing him from Case's home when DHS knew of Case's sexual abuse of D.C. and others.

¶9.     DHS and Berry answered the complaint, jointly, and, after a period of discovery, DHS moved for summary judgment. It attached the affidavit of Dr. Kim Shackelford who was the deputy administrator for the Division of Family and Children Services with DHS. DHS maintained that it had complied with all of the statutorily required background checks of Case and had conducted a thorough home study of Case's home. Further, DHS noted that a caseworker had visited D.C. twice in Case's home. While DHS admitted that there were prior allegations of physical abuse by Case, it noted that the allegations had been determined to be unsubstantiated and that there had been no report of sexual misconduct by Case until after D.C. had reported his allegations to DHS. DHS argued that it was entitled to immunity from civil liability in connection with formulating its licensing policies and procedures under Mississippi Code Section 43-15-125 (Rev. 2015). It also argued that the facts of the case demonstrated that DHS was entitled to immunity under Mississippi Code Section 11-46-9(1)(d) (Rev. 2012) of the Mississippi Tort Claims Act (MTCA).

¶10.    D.C. responded to DHS's motion for summary judgment.[4] He detailed the abuse

_____

[4] D.C. attached eight exhibits to his response: (1) Jason Case's sentencing order; (2) a DHS investigative report; (3) DHS's update of allegations against Case; (4) DHS emails regarding abuse of B.W. and D.W.; (5) a DHS letter to Case; (6) a resource family-home study of Case's home; (7) an affidavit of Debra Littleton; and (8) a DHS email.

4

against him and alleged that DHS "made no effort to provide psychiatric care or counseling" to him after Case's abuse of him. D.C. also alleged that DHS ignored Case's abuse of B.W. and D.W. D.C. argued that three genuine issues of material fact precluded summary judgment. First, D.C. maintained that DHS had prior knowledge of the acts of Case. Second, D.C. alleged that he would have been in danger had he been left in the care of Case after January 1, 2012. Third, D.C. pointed to Case's criminal conviction after D.C.'s allegations of abuse.[5]

¶11. Next, DHS moved to strike each of D.C.'s exhibits to his motion for summary judgment except the sentencing order. DHS argued that D.C.'s exhibits two through six and eight were hearsay and lacked authentication. DHS also maintained that exhibit seven, Littleton's affidavit, was hearsay. D.C. did not respond to DHS's motion to strike.

¶12. Two years later, DHS renewed its motion for summary judgment and its motion to strike. The circuit court held a hearing and found that Littleton's affidavit—while it contained hearsay—created a genuine issue of material fact with regard to actual knowledge of DHS. The circuit court also ruled that it could not determine at that stage in the litigation whether DHS was entitled to immunity under the discretionary-function exception of Section 11-46-9(1). The circuit court denied DHS's renewed motion or summary judgment as well as its motion to strike.

¶13. Aggrieved, DHS filed a petition for interlocutory appeal, which a panel of this Court

---

[5] On August 14, 2013, a jury found Case guilty of two counts of touching a child for lustful purpose under Mississippi Code Section 97-5-23 (Rev. 2006). The trial court sentenced him to twenty years in the custody of the Mississippi Department of Corrections.

granted. On appeal, DHS asks us to determine whether the circuit court erred in denying its motion for summary judgment. After review, we reverse in part the circuit court's denial of summary judgment to DHS under Section 43-15-125, and we affirm in part the circuit court's denial of summary judgment under Section 11-46-9(1)(d), because DHS did not meet its burden under Mississippi Rule of Civil Procedure 56.[6]

## STANDARD OF REVIEW

¶14. We recently reviewed our summary-judgment standard:

> With a summary-judgment motion, the mover bears the initial burden of supporting the motion for summary judgment. Miss. R. Civ. P. 56. "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." Miss. R. Civ. P. 56.

> Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c). In other words, summary judgment is appropriate where the nonmoving party fails to "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." **Buckel v. Chaney**, 47 So. 3d 148, 153 (Miss. 2010). The evidence is reviewed in the light most favorable to the nonmoving party, and the Court reviews the grant or denial of summary judgment de novo. **Bennett v. Hill–Boren, P.C.**, 52 So. 3d 364, 368 (Miss. 2011).

---

[6] Today, we decline to address whether the circuit court erred in denying DHS's motion to strike because our holding renders the issue moot. We do, however, caution future litigants that we will only consider admissible evidence in considering a Rule 56 motion. *See* **Magee v. Transcon. Gas Pipe Line Corp.**, 551 So. 2d 182, 186 (Miss. 1989) ("To have power to generate a genuine issue of material fact, any other documents, including but not limited to, depositions, answers to interrogatories, or affidavits must, first, be sworn; second, be made upon personal knowledge; and third, show that the party giving them is competent to testify.").

*McGinty v. Grand Casinos of Miss., Inc.-Biloxi*, 245 So. 3d 444, 447–48 (Miss. 2018).

## ANALYSIS

*Licensing Immunity Under Section 43-15-125*

¶15.    DHS maintains that Section 43-15-125 entitles it to immunity against D.C.'s claims concerning Case's licensing. Neither the circuit court nor D.C. have addressed DHS's claims under Section 43-15-125.

¶16.    Interpretation and application of Section 43-15-125 is an issue of first impression for this Court. Section 43-15-125 provides,

> The Department of Human Services and/or its officers, employees, attorneys and representatives shall not be held civilly liable for any findings, recommendations or actions taken pursuant to this article.

Miss. Code. Ann. § 43-15-125 (Rev. 2015).

¶17.    "Before we engage in statutory interpretation, we look to the statute to determine whether interpretation is necessary, that is, whether the language is plain, unambiguous, and in need of no interpretation." *Pat Harrison Waterway Dist. v. Cty. of Lamar*, 185 So. 3d 935, 946 (Miss. 2015) (citing *Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid*, 21 So. 3d 600, 607 (Miss. 2009), *overruled on other grounds by King v. Miss. Military Dep't*, 245 So. 3d 404, 406 (Miss. 2018)). If the statute is plain and unambiguous, "we need go no further." *Id.* (citing *Miss. Methodist Hosp.*, 21 So. 3d at 607).

¶18.    Here, we find that the statute's language is plain and unambiguous. DHS and its officers are immune from civil liability "for any findings, recommendation or actions taken pursuant to this article." There is no indication in the language of the statute that the

7

Legislature did not intend to exempt DHS and its officers from civil liability.

¶19.   Analysis of the statutory scheme in which Section 43-15-125 resides reveals the scope of the immunity intended by the Legislature.  The Legislature intended for the statute "to protect the health, safety and well-being of all children in the state who are cared for by family foster homes . . . by providing for the establishment of licensing requirements for such homes . . . and providing procedures to determine adherence to these requirements."  Miss. Code Ann. § 43-15-101 (Rev. 2015).  The statute establishes DHS[7] as the licensing authority and vests it with the authority to approve, extend, deny, suspend and revoke licenses for foster homes.  Miss. Code Ann. § 43-15-105(1) (Rev. 2015).  DHS receives applications for licenses and determines what information is required in an application.  Miss. Code Ann. § 43-15-109 (Rev. 2015).  The statute also governs revocation, suspension and reinstatement of licenses and gives DHS the discretion to discipline licensees.  Miss. Code Ann. §§ 43-15-113, -119 (Rev. 2015).  Further, the statute grants DHS the authority to conduct inspections and investigations of the facility of the licensee.  Miss. Code Ann. § 43-15-115 (Rev. 2015).

¶20.   Within this context of the statutory scheme, the language of Section 43-15-125 is plain and unambiguous.  DHS and its officers "shall not be held civilly liable for any findings, recommendations or actions taken pursuant to this article."  Miss. Code Ann. § 43-15-125.

¶21.   With the language of Section 43-15-125 established as unambiguous, we turn to D.C.'s claims of genuine issues of material fact that would preclude summary judgment. After review, it is evident that the circuit court erred by not granting summary judgment, in

_____

[7] More specifically, the Division of Family and Children Services, a subdivision of DHS, is given the authority.

part, to DHS under Section 43-15-125, which provides licensing immunity to the agency and its officers.

¶22. In his complaint, D.C. alleged that DHS provided "[i]nadequate and improper training, supervision and disciplining of foster parents in handling and supervising foster children" as well as "[i]nadequate procedures for taking complaints and/or investigating complaints of foster children." Further, Count Four alleged that DHS failed to conduct an adequate investigation into Case's "conduct and propensities." Count Five argued that DHS violated D.C.'s right to due process by not placing him in a safe foster home. In his response to DHS's motion for summary judgment, D.C. argued that DHS had prior knowledge of Case's actions and that Case's criminal conviction precluded summary judgment. On appeal, D.C. raises these same arguments. In essence, all of these claims relate to DHS's licensing of the foster home with Case as a foster parent.

¶23. These claims fail as a matter of law under Section 43-15-125. It is clear that the Legislature intended to shield DHS and its officers from civil liability "for any findings, recommendations or actions taken pursuant to this article." Miss. Code Ann. § 43-15-125. Also, it is clear that this immunity extends to DHS's inspections and investigations of the foster home for the purposes of licensing the home (and thereby the foster parent).

¶24. Further, D.C. admits that DHS investigated the allegations of Case's past physical abuse of B.W. and D. W. While he alleged that DHS "failed to conduct an[] adequate and sufficient investigation," D.C. did not offer any evidence to show that DHS's investigation was inadequate at the time that the abuse was first reported. D.C. simply argues that DHS

9

got it wrong. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." ***Stuckey v. The Provident Bank***, 912 So. 2d 859, 865 (Miss. 2005) (internal quotation marks omitted) (quoting ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 364 (Miss. 1983)).

¶25.    Section 43-15-125 grants immunity to DHS for its licensing of foster homes. Thus, the circuit court erred in denying DHS's motion for summary judgment as to any claims that sought to hold DHS liable for its findings, recommendations or action in licensing the foster home.

*MTCA Immunity Under Section 11-46-9(1)*

¶26.    Next, DHS argues that it is entitled to immunity under Section 11-46-9(1) of the MTCA. In its motion for summary judgment, DHS alleged that it followed "[a]ll policies and procedures . . . while D.C. was in Mr. Case's home and during the investigation following the allegations of abuse."

¶27.    The MTCA authorizes suits against "the state and its political subdivisions . . . arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment." Miss. Code Ann. § 11-46-5 (Rev. 2012). DHS, as a political subdivision of the state, though, is immune from claims "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty." Miss. Code Ann. § 11-46-9(1)(d).

¶28.    In considering a claim of discretionary-function immunity, this Court recently returned to the public-policy function test. ***Wilcher v. Lincoln Cty. Bd. of Supervisors***, 243 So. 3d

10

177, 187 (Miss. 2018). Under this test, "[t]his Court first must ascertain whether the activity in question involved an element of choice or judgment." *Id.* (internal quotation marks omitted) (quoting *Miss. Transp. Comm'n v. Montgomery*, 80 So. 3d 789, 795 (Miss. 2012)). "If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations. Only when both parts of the test are met does a government defendant enjoy discretionary-function immunity."[8] *Id.* (citing *Montgomery*, 80 So. 3d at 795).

¶29.    Further, "[t]his Court considers MTCA immunity as an affirmative defense." *Estate of Grimes ex rel. Grimes ex rel. Wrongful Death Beneficiaries v. Warrington*, 982 So. 2d 365, 370 (Miss. 2008) (citing *City of Ellisville v. Richardson*, 913 So. 2d 973, 975 (Miss. 2005)). "On summary judgment, as at trial, the burden of proving" an affirmative defense "falls on the part[y] asserting it . . . ." *Inland Family Practice Ctr., LLC v. Amerson*, 256 So. 3d 586, 591 (Miss. 2018). Thus, DHS bears the dual burden of production and persuasion. *See Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 409 (Miss. 2018) ("The movant bears the burden of persuasion, 'persuading the trial judge that: (1) no genuine

---

[8] We note that the circuit court ruled on the summary-judgment motion under the discretionary-function test espoused in *Brantley*. *Brantley v. City of Horn Lake*, 152 So. 3d 1106, 1115 (Miss. 2014), *overruled by Wilcher*, 243 So. 3d at 185. We examine the circuit court's ruling under the public-policy function test reestablished by *Wilcher*. On appeal, DHS has neither argued that the return to the public-policy function test was prejudicial nor has it asked for an opportunity to supplement the record or present additional evidence under the test on remand. Instead, DHS argues—under a de novo standard—that it should have prevailed under the public-policy function test reestablished by *Wilcher*. We disagree and affirm in part the trial court's denial of summary judgment. We leave any further proceedings concerning discretionary-function immunity to the discretion of the circuit court.

11

issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law.'" (quoting **Karpinsky v. Am. Nat'l Ins. Co.**, 109 So. 3d 84, 88 (Miss. 2013))).

¶30. Here, we find that DHS did not meet its burden of production or persuasion under Rule 56 since MTCA immunity is an affirmative defense. M.R.C.P. 56(c) ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Thus, the circuit court did not err in denying the motion for summary judgment under Section 11-46-9(1)(d).

¶31. D.C. made multiple allegations outside of the context of the licensure of the foster home. D.C. argued that DHS "fail[ed] to establish and enforce proper and adequate procedures, policies and practices relating to children in the custody and control of []DHS" and "fail[ed] to protect [D.C.] from har[m] perpetrated by agents of []DHS who had the responsibility for the care and custody of [D.C.]." Also, Count Four alleged that DHS failed "to adequately and properly oversee and monitor the care and treatment of" D.C. Further, Count Five argued that DHS failed "to monitor [D.C.]'s care and treatment." Similar allegations of the lack of care and treatment of foster children have been recognized as actionable under the MTCA. *See* **Miss. Dep't of Human Servs. v. S.W.**, 974 So. 2d 253, 259–60 (Miss. Ct. App. 2007) (finding that discretionary immunity did not bar suit when DHS did not "adhere to the minimum contact requirements[,] . . . . terminate[d] an

12

investigation without fully performing the outlined duties" and "failed to ensure that [the foster child] actually received the counseling for quite some time.").

¶32.    DHS's motion for summary judgment failed to demonstrate that there was no genuine issue of any material fact on these claims.  While DHS did *allege* in its motion that it followed "[a]ll policies and procedures," there was no support for this allegation outside of the context of licensure of the foster home.

¶33.    Ultimately, DHS did not meet its burden of production concerning D.C.'s claim that it did not care for him during his placement or provide medical care after D.C. reported the abuse.  DHS did not introduce any evidence that it complied with its policies regarding its care of D.C. during his placement with Case or its medical treatment of D.C. after he reported the abuse.  DHS's duty in this regard is broader than the licensing of the foster home.  *See* Miss. Code Ann. § 43-15-5 (Rev. 2015) ("The Department of Human Services shall have authority and it shall be its duty to administer or supervise all public child welfare services . . . provide for the care of dependent and neglected children in foster family homes . . . , supervise the care of such children . . . ; [and] supervise the importation of children . . . ."). In fact, none of the DHS policies or regulations were entered into the record before the Court by any party.

¶34.    DHS did attach an affidavit from Dr. Kim Shackleford, DHS's deputy administrator for the Division of Family and Children Services, but Dr. Shackleford's affidavit spoke to Case's licensure and the investigation after D.C. reported the abuse.  In relevant part, Dr. Shackleford's affidavit reads,

13

I have reviewed DHS's file on former foster parent, Jason R. Case. All of the statutorily required background checks were conducted on Mr. Case prior to his being licensed as a foster parent, including a national criminal history record information check and a child abuse registry check. Mr. Case was fingerprinted and the results were forwarded to both the Department of Public Safety and on to the FBI for a national criminal history record check. All of these checks revealed no criminal history for Mr. Case that would have given DHS notice of any potential on his part of sexual abuse of a foster child.

. . . .

. . . All policies and procedures in both the licensing of Mr. Case as a foster parent and the investigation following the allegations of abuse were followed by DHS personnel.

Nothing in Dr. Shackleford's affidavit supports the notion that DHS followed all of its policies in regards to its care for D.C. or its treatment of him after he reported the abuse. The affidavit only speaks to DHS's licensing of Case as a foster parent and investigating D.C.'s allegations of abuse.[9]

¶35. The circuit court also recognized that the summary-judgment motion was insufficient for it to determine whether or not DHS was entitled to immunity under the MTCA. At the hearing, it concluded,

The [c]ourt finds that the motion for summary judgment is not well taken and should be and is hereby overruled.

. . . I'm aware that there are cases, many cases—as a matter of fact most cases that have presented themselves to the Court, the Court's been able to quickly resolve the issue of whether it was discretionary function or not, and if it was, to grant summary judgment, and I've been very quick to do that. This is

---

[9] To be clear, it is not apparent from the record that D.C. alleged any failure on the part of DHS in its investigation of the abuse that he had reported. Any alleged error in its investigation of the earlier abuse by Case against B.W. and D.W. would be a claim concerning DHS's licensing of Case. As mentioned above, DHS and its officers are immune from such claims under Section 43-15-125.

14

actually the first tort claims case I think in—[to] survive summary judgment here in a while on discretionary function. I'm also aware that the Court has, over the last several years, started viewing discretionary function in a relatively more restricted light than they were, say, ten years ago.

The circuit court determined that DHS had not met its burden to demonstrate that no genuine issues as to any material fact existed.

¶36. We find that DHS was not entitled to summary judgment under the MTCA because it failed to meet its dual burdens of production and persuasion. There is no evidence in the record that DHS followed its policies and regulations regarding DHS's care and treatment of D.C. during placement or after the abuse allegations were reported and investigated.

## CONCLUSION

¶37. We reverse the denial of summary judgment in part and affirm in part. The circuit court erred in denying DHS summary judgment for D.C.'s claims that stem from DHS's licensing of the foster home, given the immunity DHS and its officers have under Section 43-15-125. The circuit court, though, did not err in denying DHS summary judgment under Section 11-46-9(d)(1) of the MTCA, because DHS did not meet its burden to show that no genuine issue as to any material fact existed.

¶38. **AFFIRMED IN PART; REVERSED IN PART AND REMANDED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR.**